

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH AMMONS, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 10 CV 6353<br>)<br>) Hon. Charles R. Norgle |
| CHICAGO TRANSIT AUTHORITY, | )<br>) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Elizabeth Ammons ("Ammons") sues Defendant Chicago Transit Authority (the "CTA") for discrimination on the basis of race and sex, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Before the Court is the CTA's Motion for Summary Judgment. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

Ammons, an African-American woman, began working for the CTA on February 19, 2007. She was hired as a Coordinator, Rail Janitor in the Facilities Maintenance Department. Ammons's duties "required her to determine work procedures during periods of inclement weather, to ensure prompt snow or sleet removal at critical locations, and to issue instructions to Rail Janitors and work groups." Def.'s Local Rule 56.1(a)(3) Statement of Material Facts in Supp. of its Mot. for Summ. J. ¶ 12. Ammons was also responsible for the duties outlined in the "2007-08 Rail Winter Plan," which was issued on November 27, 2007. In accordance with the

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts within the text. The Court further notes that the CTA failed to respond to Plaintiff's Local Rule 56.1 Statement of Uncontested Material Facts in Opposition to Defendants' Motion for Summary Judgment; and therefore, to the extent that the evidence is admissible, the facts contained therein are deemed admitted by the CTA. See N.D. Ill. LR 56.1(b)(3)(C); see also Johnny Blastoff, Inc. v. L.A. Rams Football Co., 188 F.3d 427, 439 (7th Cir. 1999).

plan, Coordinators were "to report to CTA's Communications/Power Control Department about the conditions of platforms, stations and ramps." Id. ¶ 17. The CTA's employees were also notified that their schedules were subject to change and that "all Coordinators were on duty when more than three inches of snow fell, and all Coordinators were responsible for removal of all snow and ice at their stations." Id.

Approximately two or three weeks after Ammons started working at the CTA, she refused to come into work when she was called on to do so because she was taking care of her mother. Ammons was not punished for this infraction. Shortly thereafter, Ammons met with CTA manager Edward Dahl ("Dahl"), a white male, to report a broken cellphone belonging to one of the janitors under her supervision. During the meeting, Dahl began to raise his voice, point his finger at Ammons, threaten to suspend her, and used the phrase "you people." Ammons originally alleged that Dahl also used the word "nigger" during their conversation. Am. Compl. ¶ 9. However, on March 14, 2013, the Court granted Ammons's motion to remove that word from her complaint, as she admitted in discovery that Dahl never actually said it. See Pl.'s Mot. to Amend. Am. Compl. on its Face or For Leave to File a Second Am. Compl. ¶¶ 2-4.

Ammons admits that at the time of the meeting she did not know what Dahl meant when he said "you people." She assumed he was either referring to her sexual orientation or race. While at her deposition Ammons could only recall that the janitor—who was the topic of her discussion with Dahl—was a woman, she later states that the janitor was of the African-American race, and that, therefore, Dahl was "probably" referring to her race when he said "you people." Pl.'s Local Rule 56.1 Statement of Uncontested Material Facts in Opp'n to Def.'s Mot. for Summ. J. ¶ 2.

Immediately following the meeting with Dahl, Ammons reported his behavior to Joyce Butler ("Butler"), an African-American woman who was the General Manager of Customer Facilities Maintenance. Butler then discussed the matter with Dahl and told him that Ammons would not receive the suspension with which he threatened her.

Months later, on December 19, 2007, Ammons was disciplined by Dahl for making false statements regarding snow removal at her stations on December 16, 2007. Ammons admits that she was disciplined, but disputes Dahl's accusations. Ammons alleges that Dahl falsely accused her of the December 16, 2007 violations. On February 5, 2008, Ammons was called in for an emergency shift, but she refused to report to work. Ammons states that she refused to come in for her emergency shift because she had worked a shift earlier that day, and it would take too long to get to her station because she did not drive and it took "between 75 minutes and 120 minutes in normal weather conditions" to get to work by way of public transportation. Id. ¶ 9. Despite her excuse, Dahl prepared a memorandum listing her "four violations of the South Sections snow strategy instructions for the 2007/2008 winter season" and her failure to report for her emergency shift on February 5, 2008. Def.'s Local Rule 56.1(a)(3) Statement of Material Facts in Supp. of its Mot. for Summ. J. ¶ 20. Dahl recommended that Ammons be terminated as a result of her violations.

On February 11, 2008, the matter was referred to John Malatesta ("Malatesta"), a white male who was the Manager II, Rail Customer Facilities Maintenance. He did not terminate Ammons, but rather issued her "a Notice of Probation/Last Chance Agreement stating that her refusal of the work assignment on February 5, 2008" violated a number of the CTA's rules, including Rule 7(a)-(c), Rule 14(d)-(e), and Rule 24. Id. ¶ 21. Ammons was suspended for five-days without pay and placed on probation for one year. Ammons alleges that she reported her

problems with Dahl to Malatesta in February of 2008, but he did not revoke her suspension. Ammons further alleges that a month later, in March of 2008, she spoke with Malatesta who said that he had observed problems with Dahl, apologized for her suspension, and promised to clear her personnel record—although Ammons never received confirmation that her record has been cleared. The Court notes that while Ammons described her February and March 2008 conversations with Malatesta in her affidavit, the statements that he allegedly made constitute hearsay and may not be considered on summary judgment. See Carlisle v. Deere & Co., 576 F.3d 649, 655 (7th Cir. 2009) (stating that "to defeat a motion for summary judgment, [a party] may rely only on admissible evidence" and if "evidence is inadmissible hearsay, [courts] may not consider it").

On February 29, 2008, Butler retired from her position as General Manager of Customer Facilities Maintenance and was replaced by Malatesta on December 7, 2008. Ammons continues to work for the CTA and received a pay raise on December 16, 2012. It is undisputed that she earns a higher rate of pay than three other Coordinator, Rail Janitors—including Robert W. Covich ("Covich") and Anthony Delgado ("Delgado").

On March 14, 2008, Ammons filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race and sex, and retaliation. The EEOC issued a Right to Sue letter to Ammons on July 7, 2010. On October 5, 2010, Ammons timely initiated this employment discrimination suit, alleging race discrimination, sex discrimination, and retaliation. On March 15, 2013, the CTA moved for summary judgment on all of Ammons's claims. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 656 (7th Cir. 2011) (citing Groesch v. City of Springfield, Ill., 635 F.3d 1020, 1022 (7th Cir. 2011)). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

"Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). If the nonmovant "is unable to 'establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp., 477 U.S. at 322).

## B. Discrimination

In her Amended Complaint, Ammons alleges discrimination on the basis of her race, African-American, and her sex, female. In responding to the CTA's motion for summary judgment, however, Ammons fails to support or even mention her claim for sex discrimination. The Court finds that this constitutes a waiver of Ammons's sex discrimination claim, and therefore, the claim is dismissed. See De v. City of Chi., No. 11 C 4521, 2012 WL 6605009, at *22 (N.D. Ill. Dec. 14, 2012) ("Failure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of his claims." (citing Palmer v. Marion Cnty., 327 F.3d 588, 597-98 (7th Cir. 2003))). Accordingly, the Court proceeds only on Ammons's race discrimination claim.

Pursuant to Title VII, "[i]t shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To establish race discrimination, Ammons must present evidence through either the direct or indirect method. To survive summary judgment under either method, Ammons "must create at least an inference of illegal discrimination." Greene v. Potter, 557 F.3d 765, 769 (7th Cir. 2009) (internal citation and quotation marks omitted); see also Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999) ("Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of discrimination may be drawn.").

*1. Direct Method*

Under the direct method, Ammons "can present either direct or circumstantial evidence to meet [her] burden." Dickerson v. Bd. of Trs., 657 F.3d 595, 601 (7th Cir. 2011). Direct evidence requires an admission by an employer. Id. Circumstantial evidence is such evidence "that 'points directly to a discriminatory reason for the employer's action.'" Fleishman v. Cont'l Cas. Co., 698 F.3d 598, 603 (7th Cir. 2012) (quoting Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 783 (7th Cir. 2004)). "[F]undamentally the plaintiff must connect the circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons." Id.

First, Ammons purports to show racial discrimination through direct evidence. Ammons describes an incident with her manager Dahl that occurred within the first few months of her employment in early 2007, in which she reported a broken cellphone of one of the janitors under her supervision. At one point during the meeting, Dahl raised his voice, threatened Ammons with suspension, and used the phrase "you people." Ammons admits that, at the time, she did not know what he meant by "you people," and stated that he may have been referring to her sexual orientation or race. At the time of her deposition, Ammons could not recall which janitor owned the cellphone at issue beyond the fact that the janitor was female. Later, in her affidavit in opposition to the instant motion, Ammons alleges that the janitor was African-American, and therefore, Dahl was "probably" referring to her race when he said "you people." Pl.'s Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J. Ex. 1, at ¶ 2.

It is unclear from the context of the conversation which "people" Dahl meant when he said "you people." Ammons speculates that he was referring to her race but he could have just as easily been referring any other category of people, including CTA rail janitors in general. See

Ardson v. Denneys Rest., No. 05 C 6116, 2007 WL 2893648, at *4 (N.D. Ill. Sept. 26, 2007) ("This evidence completely fails to show a 'mosaic' pointing toward discrimination. The only action that is even arguably related to race is the use of the phrase 'you people' . . . but which carries no sense of context from which it might be determined that [plaintiff's supervisor] was referring to African-Americans as opposed to some other category, such as the Denny's staff in general."). Even if Ammons placed evidence before the Court—context from which it could draw a reasonable inference of discriminatory animus—it is undisputed that Ammons was not punished in connection with the aforementioned event. See Adelman-Reyes v. St. Xavier Univ., 500 F.3d 662, 666-67 (7th Cir. 2007) ("There is nothing in the record linking the first of these remarks to the employment decision in question; we have previously held that 'stray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment.'" (quoting Yong-Qian Sun v. Bd. of Trs., 473 F.3d 799, 813 (7th Cir. 2007))). Immediately following her meeting with Dahl, Ammons reported the incident to Dahl's superior, Joyce Butler, who subsequently spoke with Dahl about the incident and told him that Ammons would not be suspended. See Ardson, 2007 WL 2893648, at *5 (finding that although the phrase "you people" constituted some evidence of discriminatory animus, it was unconnected to any employment action—adverse or otherwise); see also Yuknis v. First Student, Inc., 481 F.3d 552, 553 (7th Cir. 2007) ("There is no liability if the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her [race]." (internal quotation marks and citation omitted)). Therefore, Ammons fails to "produce . . . evidence that would permit a jury to infer that discrimination motivated an adverse employment action." Diaz v. Kraft Foods Global, Inc., 653 F.3d 582, 587 (7th Cir. 2011).

Next, Ammons alleges that she can prove discrimination through a "convincing mosaic" of circumstantial evidence. "In both retaliation and discrimination cases, [courts] have recognized three categories of circumstantial evidence available to a plaintiff using the 'convincing mosaic' approach." Coleman v. Donahoe, 667 F.3d 835, 860 (7th Cir. 2012). The three categories include:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that . . . the employer's reason is a pretext for discrimination.

Darchak v. City of Chi. Bd. of Educ., 580 F.3d 622, 631 (7th Cir. 2009) (internal quotation marks and citations omitted). Ammons attempts to offer evidence of suspicious timing. As a general rule, "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." O'Leary v. Accretive Health, Inc., 657 F.3d 625, 635 (7th Cir. 2011). "When temporal proximity is one among several tiles in an evidentiary mosaic depicting retaliatory [or discriminatory] motive, however, suspicious timing . . . can sometimes raise an inference of a causal connection." Coleman, 667 F.3d at 860 (internal quotation marks and citation omitted).

Specifically, Ammons argues that the timing between the retirement of Butler, an African-American female, and the imposition of her five-day suspension by Butler's replacement, John Malatesta, a white male, is circumstantial evidence of discrimination. In so arguing, Ammons appears to suggest that she was under the "protection" of Butler, another African-American female, and as soon as Butler left, Dahl was finally able to execute his intent to discriminate through the new General Manager, Malatesta. However, the undisputed facts do not support this inference. First, Ammons received her suspension on February 11, 2008, and

9

Butler did not officially retire until almost three weeks later on February 29, 2008. Because Butler was still employed when Ammons received her suspension, the timing of her suspension and the retirement of Butler do not conceivably constitute circumstantial evidence of racial discrimination under any of the three categories.

Furthermore, to the extent that Ammons argues that her suspension was circumstantial evidence of pretext for Dahl's discrimination, this argument also fails. Ammons received the five-day suspension on February 11, 2008 because she failed to report to work for an emergency shift on February 5, 2008—an event unrelated to the meeting with Dahl in 2007, and occurring a year later. While Ammons provides her various reasons or excuses for missing the shift, she admits that she nevertheless refused to report to work even though she was aware that she was "on-call" when there was more than three inches of snow on the ground. Ammons's admission that she violated the rules of her employment in 2008 does not support a reasonable inference that the 2008 suspension was issued on the basis of racial discrimination dating back to an incident that occurred one year earlier. "[T]he only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." O'Leary, 657 F.3d at 635 (internal quotation marks and citation omitted). Here, Ammons admits that the CTA's proffered reason was true. "The record is simply void of the bits and pieces of circumstantial evidence necessary to establish a causal link . . . ." Overly v. Keybank Nat'l Ass'n, 662 F.3d 856, 866 (7th Cir. 2011).

Finally, based on the "cat's paw" theory of employer liability, Ammons fails to show that Dahl's allegedly discriminatory animus motivated her suspension issued by Malatesta. Under this theory, "plaintiffs must produce evidence that a [discriminatory] motive *actually* influenced the decision-maker, not merely that it *could* have." Brown v. Advocate S. Suburban Hosp., 700 F.3d 1101, 1108 (7th Cir. 2012); see also Cook v. IPC Int'l Corp., 673 F.3d 625, 628 (7th Cir.

2012) ("In employment discrimination law the "cat's paw" metaphor refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action."). Here, the undisputed facts show that while Dahl suggested termination for Ammons based on a series of alleged violations, Malatesta ultimately rejected Dahl's suggestions and accompanying memorandum and only issued Ammons a five-day suspension for the single violation of failing to report to work on February 5, 2008. Accordingly, Ammons has not provided any affirmative evidence that Dahl improperly influenced Malatesta. Because Ammons fails to present any evidence of discrimination under the direct method, she must establish discrimination under the indirect method in order to survive summary judgment on her claim.

### 2. Indirect Method

Under the indirect burden-shifting method prescribed by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), Ammons must establish a prima facie case of race discrimination by showing that "(1) she is a member of a protected class; (2) she met [her employer's] legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside of her protected class received more favorable treatment." Cambell v. Adventist Hinsdale Hosp., No. 12-1885, 2013 WL 1278090, at *2 (7th Cir. Mar. 29, 2013). If Ammons demonstrates prima facie discrimination, the burden shifts to the CTA to "produce a legitimate, noninvidious reason for its actions." Atanus v. Perry, 520 F.3d 662, 672 (7th Cir. 2008). If the CTA is able to provide such a reason, "the burden then shifts back to [Ammons] to show that the [CTA's] reasons 'are false and only a pretext for discrimination.'" Id. (quoting Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir. 1997)).

It is undisputed that Ammons is a member of a protected class and that she suffered an adverse employment action when she received a five-day suspension. However, Ammons fails to present evidence as to the remaining elements of her prima facie case. The CTA argues that Ammons was not meeting legitimate employment expectations because, *inter alia*, she failed to report to her emergency shift on February 5, 2008. Indeed, Ammons admits that she did not show up for that shift.

Additionally, Ammons fails to show an employee who is similarly situated that received more favorable treatment. Ammons lists three different employees as comparators whom she argues received better treatment. "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Coleman, 667 F.3d at 847 (internal quotation marks and citation omitted).

First, Ammons argues that Covich and Delgado, both white male Coordinator, Rail Janitors, are valid comparators who were treated more favorably. Covich and Delgado received reprimands—not suspensions—when they left their work areas to have lunch together at a Bar and Grill. Failure to exercise one's best judgment over the lunch hour, however, is not the same as failing to report for a shift entirely, particularly during a snow storm. In addition, neither Covich nor Delgado was reprimanded by the same supervisor, Malatesta, who issued the suspension to Ammons. Accordingly, Covich and Delgado do not satisfy the standard for comparators.

Lastly, Ammons argues that Dennis M. Rogers ("Rogers"), another white male Coordinator, Rail Janitor (who is now deceased), is a valid comparator. Like Ammons, Rogers

also failed to report to work during the early months of 2008, for which he received a four-day suspension without pay. While Ammons admits that he received a similar punishment, she alleges that she heard from "someone" at the CTA that Rogers did receive pay for the days on which he was suspended. But, Ammons's "mere conclusory allegations do not constitute evidence." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). Moreover, she admits that "Rogers was suspended without pay for four days, from April 2-5, 2008." Def.'s Local Rule 56.1(a)(3) Statement of Material Facts in Supp. of its Mot. for Summ. J. ¶ 32 (emphasis added). Therefore, because Rogers received the same or similar punishment, he does not constitute a similarly situated individual outside of Ammons's protected class who was treated more favorably. "Absent a valid comparator, [Ammons] cannot move past summary judgment under the indirect method of proof." Diaz, 653 F.3d at 590. Accordingly, the CTA is entitled to judgment as a matter of law on Ammons's race discrimination claim.

## C. Retaliation

Ammons also alleges that the CTA suspended her for five-days "partially or wholly, in retaliation for her engaging in a protected activity, to wit, informing Butler in February, 2007 of the improper and harassing treatment she was receiving from [Dahl]." Am. Compl. ¶ 39. Title VII provides that, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). To defeat a motion for summary judgment on a retaliation claim, Ammons must provide "sufficient evidence of retaliation through either a direct or indirect method." Silverman v. Bd. of Educ., 637 F.3d 729, 740 (7th Cir. 2011).

*1. Direct Method*

Under the direct method of proof, Ammons must be able to show through either direct or circumstantial evidence: "(1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two." Id. While direct evidence "essentially requires an admission by the employer . . . circumstantial evidence of retaliation may include suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Harper v. C.R. Eng., Inc., 687 F.3d 297, 307 (7th Cir. 2012) (internal quotation marks and citation omitted).

It is undisputed that Ammons suffered an adverse employment action when she received a five-day suspension. Ammons contends that she engaged in statutorily protected activity when she told Butler about her 2007 meeting with Dahl where he used the phrase "you people." Fatal to her claim, however, is Ammons's failure to show a causal connection between any allegedly discriminatory comments made by Dahl in 2007 and her ultimate suspension given by Malatesta in February of 2008, a year later, for failing to report to work. As discussed above, Ammons fails to present either direct or circumstantial evidence to raise an inference of a causal connection between the two events. Accordingly, Ammons fails to produce evidence of retaliation through the direct method.

*2. Indirect Method*

Under the indirect method, a prima facie case of retaliation is established by showing that: "(1) [she] engaged in a statutorily protected activity; (2) [she] met [her] employer's legitimate expectations, i.e., [she] was performing [her] job satisfactorily; (3) [she] suffered a materially adverse action; and (4) [she] was treated less favorably than some similarly situated

employee who did not engage in the statutorily protected activity." Harper, 687 F.3d at 309. "Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory reason" for the retaliation. Id. "If the defendant meets its burden, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual." Id. As discussed above, Ammons fails to satisfy her burden to show that she was meeting the CTA's legitimate expectations, and that she was treated less favorably than a similarly situated employee. Accordingly, Ammons fails to establish a prima facie case of retaliation under the indirect method. Summary judgment is therefore appropriate.

### III. CONCLUSION

For the foregoing reasons, the Court enters summary judgment for the CTA on all of Ammons's remaining claims.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: June 21, 2013